UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

KAMARIA BRISSEAU,

                Plaintiff,

v.

THE MAYOR'S FUND TO ADVANCE NEW YORK CITY,
NAJMA ALI CHERMIN, IRFAN AHMED

                Defendant(s)

-----------------------------------------------------------X

____CV:_____

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Kamaria Brisseau, by her attorneys, alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for discrimination, retaliation, and hostile work environment brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.

2. Plaintiff, a highly qualified Black female finance and operations executive, was hired as the Director of Finance and Operations of the Mayor's Fund to Advance New York City ("the Fund") in September 2023. Her tenure was short-lived not because of performance, but because she uncovered misconduct, insisted on compliance with governing law and accounting standards, and confronted discrimination in the workplace.

3. Defendants including Interim Executive Director Najma Ali Chermin and Chief of Staff Irfan Ahmed subjected Plaintiff to ongoing obstruction, undermined her authority, marginalized her from leadership activities, and created a hostile work environment rooted in discriminatory bias related to her race, gender, and national origin. Their

conduct was motivated by unlawful animus or was the direct result of discriminatory stereotyping and resentment toward Plaintiff as the only Black woman in senior leadership.

4. After Plaintiff repeatedly raised concerns including during a public oversight meeting attended by outside auditors and representatives from the Mayor's Office, and after filing internal complaints of discriminatory treatment Defendants retaliated swiftly. They placed her on a baseless Performance Improvement Plan ("PIP"), stripped her responsibilities, demoted her, and terminated her the very next day.

5. The adverse changes inflicted upon Plaintiff including demotion, loss of duties, rescission of managerial authority, removal from meetings, and marginalization fall squarely within the "adverse employment action" framework clarified by the Supreme Court in *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024). Under *Muldrow*, an employer violates Title VII where discriminatory intent causes "disadvantageous" changes to the terms or conditions of employment even absent a reduction in pay. Defendants' conduct easily satisfies this standard.

6. Liability is further supported by the principles articulated in *Vance v. Ball State Univ.*, 570 U.S. 421 (2013), clarifying that individuals who exercise authority to take tangible employment actions or whose recommendations are relied upon qualify as supervisors for purposes of Title VII liability. Both Chermin and Ahmed exercised such authority.

7. Defendants' conduct also constitutes retaliation under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), which holds employers liable when a biased subordinate influences the ultimate decisionmaker commonly known as "cat's paw" liability. At minimum,

Defendant Ahmed's discriminatory animus was a proximate cause of Plaintiff's termination.

## JURISDICTION AND VENUE

8. Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343.

9. Supplemental jurisdiction is proper under 28 U.S.C. § 1367.

10. Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as all events occurred in New York County.

## PARTIES

11. Plaintiff Kamaria Brisseau is an African-American woman residing in Brooklyn, New York.

12. Defendant The Mayor's Fund to Advance New York City is a nonprofit corporation headquartered at 253 Broadway, New York, NY 10007.

13. Defendant Najma Ali Chermin was at all relevant times the Interim Executive Director of the Fund and exercised supervisory authority over Plaintiff, including authority to take tangible employment actions.

14. Defendant Irfan Ahmed was at all relevant times the Fund's Chief of Staff and influenced personnel decisions affecting Plaintiff. His conduct constitutes supervisory conduct under *Vance*, or in the alternative, discriminatory input that proximately caused adverse action under *Staub*.

15. John/Jane Does 1–10 are individuals who participated in, directed, assisted in, or failed to prevent discrimination or retaliation.

## FACTUAL ALLEGATIONS

**Supervisory Authority Under Vance**

16. Defendant Chermin had direct authority to discipline, demote, reassign, and terminate Plaintiff. Under *Vance*, she is a statutory "supervisor," triggering heightened employer liability.

17. Defendant Ahmed, though not Plaintiff's titular supervisor, exercised influence over workplace operations and repeatedly undermined Plaintiff's authority. His recommendations and hostility materially influenced the Fund's adverse employment decisions. Under *Staub*, his discriminatory actions are imputed to the Fund as proximate causes of her retaliatory termination.

**Muldrow Adverse Treatment**

18. Defendants' actions including removing operational responsibilities, restricting her access to systems, excluding her from meetings, publicly undercutting her authority, and assigning her duties to male staff constitute adverse employment actions even without a loss in pay, because they imposed material disadvantage and altered her working conditions. *Muldrow*, 144 S. Ct. 967.

**Cat's Paw Liability Under Staub**

19. Defendant Ahmed's discriminatory animus expressed through targeted interference, public disparagement, and undermining Plaintiff's authority proximately caused the adverse actions taken by Chermin and the Fund.

20. The Fund's claimed "insubordination" justification is a textbook example of a biased subordinate's narrative being adopted by decisionmakers, rendering the employer liable under *Staub*.

**Pretext and Timing**

21. Plaintiff engaged in protected activity by raising concerns internally and during the March 2024 oversight meeting. Within days, Defendants issued a retaliatory PIP, stripped her duties, and terminated her.

22. The absence of any prior performance documentation, coupled with timing, demonstrates retaliation.

## CAUSES OF ACTION

### COUNT I – Title VII: Race, Gender, and National Origin Discrimination

23. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

24. Plaintiff's demotion, stripping of duties, and marginalization constitute adverse employment actions under *Muldrow*, as they materially worsened the terms and conditions of her employment.

25. Defendant Chermin's conduct binds the Fund due to her supervisory authority.

26. Defendant Ahmed's biased conduct proximately caused the adverse actions.

### COUNT II – Title VII: Retaliation

27. Plaintiff engaged in protected activity by complaining internally about discrimination and by raising protected concerns during the March 2024 meeting.

28. Under *Staub*, even if Chermin were the formal decisionmaker, Ahmed's retaliatory animus is attributable to the Fund.

29. The adverse actions including the PIP, removal of responsibilities, and termination occurred in close temporal proximity and lack any legitimate non-retaliatory justification.

### COUNT III – Title VII: Hostile Work Environment

30. Plaintiff was subjected to severe and pervasive hostility, including intentional exclusion, undermining of her role, public disparagement, administrative obstruction, and disparate treatment.

31. This conduct, motivated by race and gender stereotypes, altered the conditions of employment in violation of Title VII.

### COUNT IV – NYCHRL: Discrimination

32. Defendants' conduct constitutes discrimination under the NYCHRL, which requires only that Plaintiff show she was treated "less well" because of her protected characteristics.

### COUNT V – NYCHRL: Retaliation

33. The retaliatory actions would deter a reasonable employee from engaging in protected activity, satisfying the NYCHRL's broad standard.

## COUNT VI – NYCHRL: Aiding and Abetting

34. Defendants Chermin and Ahmed directly participated in, assisted, encouraged, or failed to prevent the discriminatory and retaliatory conduct and are individually liable under § 8-107(6).

## COUNT VII   Violation of 42 U.S.C. § 1981
### (Race Discrimination, Race-Based Hostile Work Environment, and Retaliation)
### Against All Defendants

35. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

36. 42 U.S.C. § 1981 guarantees all persons within the jurisdiction of the United States the same right as white citizens to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual employment relationship.

37. At all relevant times, Plaintiff was engaged in a contractual employment relationship with Defendant The Mayor's Fund to Advance New York City.

38. Defendants intentionally discriminated against Plaintiff on the basis of race by subjecting her to disparate treatment, undermining her authority, excluding her from essential meetings, obstructing her professional responsibilities, and demoting and terminating her because she is a Black woman.

39. Under § 1981, both the Fund and the individual defendants including Najma Ali Chermin and Irfan Ahmed are liable because they personally participated in and intentionally caused discriminatory and retaliatory actions against Plaintiff.

40. Defendant Ahmed's repeated interference with Plaintiff's authority, public disparagement, refusal to allow staff to follow her directives, and encouragement of insubordination constitute intentional discriminatory conduct based on Plaintiff's race and satisfy the standard for individual liability.

41. Defendant Chermin, who possessed full supervisory authority over Plaintiff under *Vance v. Ball State Univ.*, adopted and executed decisions influenced by discriminatory animus. Her actions including placing Plaintiff on a pretextual PIP, stripping responsibilities, and terminating Plaintiff constitute intentional discrimination in violation of § 1981.

42. *Cat's Paw Liability (Staub).* Even if Chermin were the sole formal decisionmaker, Ahmed's discriminatory animus was a proximate cause of the adverse actions, rendering the Fund liable under the "cat's paw" doctrine established in *Staub v. Proctor Hospital*.

43. Defendants' acts including demotion, removal of duties, marginalization of authority, interference with professional functions, and termination constitute adverse changes in the employment relationship and are actionable under § 1981. These harms plainly meet the "materially adverse" threshold clarified in *Muldrow v. City of St. Louis*.

44. Defendants also retaliated against Plaintiff for opposing discriminatory conduct; reporting bullying and differential treatment based on her race; raising compliance failures and discriminatory behavior in her Board Memorandum and during the March 2024 oversight meeting.

45. After engaging in protected activity, Plaintiff was abruptly placed on a PIP; demoted; stripped of key responsibilities; isolated from leadership; terminated the next day.

46. These retaliatory actions violate § 1981 because they were motivated by discriminatory animus or undertaken in response to Plaintiff's opposition to discrimination.

47. The conduct described created a racially hostile work environment, as Plaintiff was subjected to ongoing, severe, and pervasive disrespect, obstruction, exclusion, undermining of her professional role, and targeted hostility not imposed on non-Black employees.

48. The hostile work environment was sufficiently severe to alter the conditions of Plaintiff's employment and would have affected a reasonable person in Plaintiff's position.

49. As a direct and proximate result of Defendants' violations of § 1981, Plaintiff suffered lost wages, lost benefits, emotional distress, reputational harm, economic losses, and other compensable injuries.

50. Plaintiff seeks all remedies available under § 1981, including: compensatory damages, punitive damages against the individual defendants and the Fund, attorneys' fees, and all other relief available under federal law.

**COUNT VIII – Violation of the New York State Human Rights Law (NYSHRL)**
**N.Y. Exec. Law § 296**
**(Discrimination Based on Race, Gender, and National Origin)**
**Against All Defendants**

51. Plaintiff repeats and realleges all prior paragraphs.

52. The NYSHRL prohibits discrimination in employment on the basis of race, gender, and national origin.

53. Plaintiff is a member of several protected classes, including race (Black), gender (female), and national origin.

54. Defendants through actions by Interim Executive Director Najma Ali Chermin, Chief of Staff Irfan Ahmed, and other senior staff subjected Plaintiff to discriminatory treatment by undermining her authority, denying her access to systems, excluding her from meetings, obstructing her performance, scapegoating her for institutional failures, and subjecting her to harsher scrutiny than comparators outside her protected classes.

55. Defendants then imposed materially adverse changes to the terms and conditions of Plaintiff's employment including stripping her responsibilities, demoting her, placing her on a baseless PIP, and ultimately terminating her.

56. These actions constitute unlawful discrimination under the NYSHRL.

57. As a direct and proximate result, Plaintiff suffered economic loss, emotional distress, reputational harm, and other damages.

**COUNT IX – NYSHRL: Hostile Work Environment**
**N.Y. Exec. Law § 296**
**Against All Defendants**

58. Plaintiff repeats and realleges all prior paragraphs.

59. Defendants subjected Plaintiff to a hostile work environment permeated with race- and gender-based hostility, including sustained exclusion, repeated undermining, obstruction of her job functions, public belittlement, encouragement of insubordination, and differential treatment.

60. Taken together, this conduct was severe or pervasive enough to alter the terms, conditions, and privileges of Plaintiff's employment in violation of the NYSHRL.

61. Individual defendants Chermin and Ahmed directly participated in creating this hostile environment and are individually liable under NYSHRL § 296(6).

62. Plaintiff suffered emotional distress, humiliation, and other damages as a result.

**COUNT X – NYSHRL: Retaliation**
**N.Y. Exec. Law § 296(7)**
**Against All Defendants**

63. Plaintiff repeats and realleges all prior paragraphs.

64. The NYSHRL prohibits retaliation against employees who oppose or report discriminatory practices.

65. Plaintiff engaged in protected activities by, among other things:

   a. complaining internally about discriminatory treatment;

   b. raising concerns regarding hostile conduct by Ahmed and others;

   c. submitting a detailed memorandum documenting discrimination;

   d. speaking at the March 2024 oversight meeting about compliance violations and discriminatory treatment.

66. In retaliation, Defendants issued a sudden, pretextual PIP; removed Plaintiff's operational responsibilities; demoted her; isolated her from leadership; terminated her the next day.

67. The temporal proximity and lack of legitimate justification demonstrate retaliatory motive.

68. Plaintiff suffered economic and emotional damages as a result.

### COUNT XI – Violation of the New York City Human Rights Law (NYCHRL)
### N.Y.C. Admin. Code §§ 8-107(1) & (6)
### Against All Defendants

69. Plaintiff repeats and realleges all prior paragraphs.

70. Under the NYCHRL, Plaintiff need only show she was treated "less well" because of her protected characteristics.

71. Defendants' conduct including exclusion from meetings, oppressive oversight, undermining, stripping of duties, demotion, and retaliatory firing plainly meets and exceeds this standard.

72. The NYCHRL imposes individual liability on persons who aid, abet, incite, compel, or coerce discrimination; Defendants Chermin and Ahmed are individually liable under § 8-107(6).

73. Plaintiff suffered economic and emotional harm as a result of Defendants' violations.

### COUNT XII – NYCHRL: Retaliation
### N.Y.C. Admin. Code § 8-107(7)
### Against All Defendants

74. Plaintiff repeats and realleges all prior paragraphs.

75. Plaintiff engaged in protected activity by opposing unlawful discrimination and reporting noncompliance and discriminatory conduct to Fund leadership and the Board.

76. Defendants retaliated by accelerating discipline, redistributing Plaintiff's duties, marginalizing her role, placing her on a baseless PIP, and terminating her within days.

77. Under the NYCHRL's expansive standard, any conduct reasonably likely to deter protected activity is actionable; Defendants' retaliation meets this standard.

78. Plaintiff seeks all remedies available, including punitive damages.

**COUNT XIII – Violation of the New York State Whistleblower Law
N.Y. Labor Law § 740
Against The Mayor's Fund, Chermin, and Ahmed**

79. Plaintiff repeats and realleges all prior paragraphs.

80. N.Y. Labor Law § 740 prohibits an employer from retaliating against an employee who discloses or threatens to disclose unlawful conduct that violates statutes, rules, regulations, or poses a substantial and specific danger to public health or safety.

81. Plaintiff engaged in protected whistleblower activity when she:

    a. identified material financial compliance violations;

    b. warned leadership of GAAP violations;

    c. objected to improper fund disbursement practices;

    d. raised wrongdoing publicly during the March 2024 oversight meeting;

    e. documented these violations in her memorandum to the Board.

82. Defendants knew or reasonably should have known of Plaintiff's protected disclosures.

83. In retaliation, Defendants, demoted Plaintiff; stripped responsibilities; placed her on a pretextual PIP; isolated her from operations; terminated her the next day.

84. Defendant Chermin executed the termination; Defendant Ahmed acted as the biased instigator whose influence proximately caused the retaliatory outcome, rendering both individually liable.

85. Plaintiff suffered lost wages, lost benefits, emotional distress, and consequential damages.

86. Plaintiff seeks all statutory relief, including reinstatement or front pay, back pay, compensatory damages, and attorneys' fees.

## JURY DEMAND

Plaintiff demands trial by jury on all issues triable of right.

**Dated: December 7, 2025 New York, New York**

**Respectfully submitted,**

                                                                   **MITCHELL LAW GROUP, P.C.**

                                                                     /s/ Jerome Mitchell
                                                                 Jerome K. Mitchell, Esq.
                                                                 295 Madison Avenue, 12th Floor
                                                                 New York, NY 10017
                                                                 Tel: (646) 290-6492
                                                                 Email: j.mitchell@mitlawgrp.com
                                                                 Attorney for Plaintiff

**VERIFICATION**

I, Kamaria Brisseau (or certify, verify, or state) under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. I am an adult female over the age of 18. My current address is 1321 E. 96th Street, Brooklyn, NY 11236. I am the Plaintiff in the accompanying Verified Complaint, against the Mayor's Fund to Advance New York City, Najma Ali Chermin, Irfan Ahmed. I have personal knowledge of the facts alleged in this Verified Complaint, which I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7 day of December, 2025

Brooklyn, New York

_____

Kamaria Brisseau